SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X    Index No.:        0 7 1 0 5 4 3 9
KICIA GRACE,                                                           Date Filed:

                                        Plaintiff,                     **_SUMMONS_**

        - against -                                                    Plaintiff designates
                                                                       New York County as
JOHNSON & JOHNSON, ORTHO-McNEIL                                        the place of trial.
PHARMACEUTICAL, INC., JOHNSON & JOHNSON
PHARMACEUTICAL RESEARCH AND DEVELOPMENT,                               The basis of the
LLC, DESIREE A. CLARKE, M.D., and WEST CARE                            venue is CPLR § 509
MEDICAL ASSOCIATES,                                                    Plaintiff resides at:
                                                                       85 Columbia Street
                                        Defendants.                    New York, NY
------------------------------------------------------------------X    10002

**To the above named Defendant(s):**

        **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this
action and to serve a copy of your answer, or, if the complaint is not served with this
summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after
the service of this summons, exclusive of the day of service (or within 30 days after the
service is complete if this summons is not personally delivered to you within the State of
New York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

Dated:  New York, New York
        April 20, 2007

TO:

JOHNSON & JOHNSON
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

ORTHO-McNEIL PHARMACEUTICAL, INC.
1000 US Hwy. 2002
Raritan, NJ 08869-0602

JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT,
LLC
920 Rte., 202 South
Raritan, NJ 08869-1420

DESIREE A. CLARKE, M.D.
c/o WEST CARE MEDICAL ASSOCIATES
327 Central Park West
New York, NY 10025

WEST CARE MEDICAL ASSOCIATES
327 Central Park West
New York, NY 10025

# ORIGINAL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

KICIA GRACE,

                     Plaintiff,

      - against -

JOHNSON & JOHNSON, ORTHO-McNEIL
PHARMACEUTICAL, INC., JOHNSON & JOHNSON
PHARMACEUTICAL RESEARCH AND DEVELOPMENT,
LLC, DESIREE A. CLARKE, M.D., and WEST CARE
MEDICAL ASSOCIATES,

                   Defendants.

-------------------------------------------------------------------X

Index No.:
Date Purchased:

07105439

**VERIFIED
COMPLAINT**

FILED
APR 23 2007
NEW YORK
COUNTY CLERK'S

      Plaintiff, by her attorneys, **DOUGLAS AND LONDON, P.C.**, on behalf of herself, upon

information and belief, at all times hereinafter mentioned, alleges as follows:


### NATURE OF THE CASE

1.     This action is brought on behalf of Plaintiff, Kicia Grace who used the Ortho Evra

norelgestromin/ethinyl estradiol transdermal system (hereinafter collectively referred to as either

"Ortho Evra" or "the Patch").

2.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed

the Patch for use as a transdermal birth control.

3.     When warning of the Patch's safety and risks, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. negligently and improperly

relied on safety and risk information derived from studies of birth control pills, stating "[t]he following information is derived primarily from studies of birth control pills. Since ORTHO EVRA® contains hormones similar to those found in birth control pills, it is *expected* to be associated with similar risks" (package insert, revised May 2003) (emphasis added).

4.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. negligently and improperly failed to perform sufficient tests, if any, on women using and/or wearing the Patch during clinical trials, forcing Plaintiff, and her physicians, hospitals, and the FDA, to rely on safety information that applies to oral birth control medication, hereinafter referred to as "the Pill," which does not entirely and/or necessarily apply to the Patch whatsoever.

5.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were negligent in failing to adhere to and/or take into consideration warnings from the FDA, prior to FDA approval of Ortho Evra, who determined, inter alia, that blood clots could be a problem with the Patch.

6.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. carelessly and negligently and/or intentionally misrepresented the estimates of mortality rates from use of the Patch through their own admission that data derived from studies were primarily obtained with oral contraceptives, and is merely "*likely* to apply to Ortho Evra as well," (package insert, revised May 2003) (emphasis added).

2

7.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were negligent in failing to conduct sufficient tests that would allow them to appropriately determine and report the safety and risks associated with the intake of hormones contained in Ortho Evra through a transdermal system versus an oral route, such as the Pill.

8.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. falsely and fraudulently represented, through all vehicles of sales, marketing, advertising and promotion to the medical and healthcare community, and to the Plaintiff, the FDA, and the public in general that said drug, Ortho Evra, was as safe as the Pill, when in fact Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were aware that "[t]here is *no epidemiologic data available to determine whether safety and efficacy with the transdermal route of administration would be different than the oral route*," (package insert, revised May 2003) (emphasis added).

9.     Yet, on November 10, 2005 the FDA approved updated labeling for the Ortho Evra contraceptive patch to warn healthcare providers and patients that the Patch exposes women to about 60 percent more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen.

10.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. falsely and fraudulently represented, through all vehicles of sales, marketing, advertising and promotion to the medical and healthcare community, and to the Plaintiff, the FDA, and the

public in general that the risk of venous thromboembolism was the same as that of the Pill, when in fact Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew that "[i]t is *unknown* if the risk of venous thromboembolism with Ortho Evra use is different than with use of combination oral contraceptives," (package insert revised: May 2003) (emphasis added).

11.     As a result of the defective nature of the Patch, those persons who use and/or used and relied on the Patch have suffered and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

12.     Plaintiff herein has sustained the above health consequences due to her use of the Patch. Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. concealed their knowledge of the defects in their products from the Plaintiff, and her physicians, hospitals, pharmacists, the FDA, and the public in general.

13.     Consequently, Plaintiff seeks compensatory damages as a result of her use of the Patch, which has caused, may cause, and/or will continue to cause Plaintiff to suffer and/or be at greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or

4

transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## PARTY PLAINTIFF

14.    Plaintiff, KICIA GRACE, is a citizen of the United States of America, and resides in the State of New York, within the County of New York.

15.    Plaintiff, KICIA GRACE, was born on September 17, 1973.

16.    Plaintiff, KICIA GRACE was a patient of Defendant DESIREE A. CLARKE, M.D. and/or Defendant WEST CARE MEDICAL ASSOCIATES from approximately October 2002 up through and including February 16, 2005.

17.    Plaintiff, KICIA GRACE, received the ORTHO EVRA birth control patch from Defendant DESIREE A. CLARKE, M.D., her agents, employees, nurses, physician's assistants, and/or Defendant WEST CARE MEDICAL ASSOCIATES as early as February 2004, up through and including May, 2004.

18.    Plaintiff, KICIA GRACE first began using the Patch in or about March 2004, and used the Patch until approximately May 2004.

19.    As result of using Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'s Patch, Plaintiff, Kicia Grace, was caused to suffer a pulmonary embolism on or about May 13, 2004.

20.    The pulmonary embolism sustained by Plaintiff, Kicia Grace, was caused by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'s Patch.

## PARTY DEFENDANTS

21.    Upon information and belief, and at all times hereinafter mentioned, Defendant, DESIREE A. CLARKE, M.D., was and still is a physician duly licensed to practice medicine in the State of New York with her principle offices for the practice of medicine located in New York, New York, within the County of New York.

22.    Upon information and belief, and at all times hereinafter mentioned, Defendant, DESIREE A. CLARKE, M.D., specialized in the field of obstetrics and gynecology.

23.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES and still is a professional corporation organized and existing under and by virtue of the laws of the State of New York.

24.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

25.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is a partnership, organized and existing under and by virtue of the laws of the State of New York.

26.    Upon information and belief, and at all times hereinafter mentioned, the

Defendant WEST CARE MEDICAL ASSOCIATES, was and still is a limited liability partnership organized and existing under and by virtue of the laws of the State of New York.

27.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is a limited liability corporation organized and existing under and by virtue of the laws of the State of New York.

28.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is a group practice organized and existing under and by virtue of the laws of the State of New York.

29.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is a physician's association organized and existing under and by virtue of the laws of the State of New York.

30.    Defendant, WEST CARE MEDICAL ASSOCIATES, was and still is located at 327 Central Park West, New York, New York, within the County of New York.

31.    Upon information and belief, and at all times hereinafter mentioned, Defendant DESIREE A. CLARKE, M.D., was associated with other physicians, more specifically Defendant, WEST CARE MEDICAL ASSOCIATES, for the practice of medicine.

32.    Upon information and belief, and at all times hereinafter mentioned, Defendant DESIREE A. CLARKE, M.D., was a member, partner, officer, director, and/or shareholder alone and/or with other physicians in Defendant, WEST CARE MEDICAL ASSOCIATES.

33.    Upon information and belief, and at all times hereinafter mentioned, Defendant DESIREE A. CLARKE, M.D., was an employee, agent, and/or servant for Defendant, WEST CARE MEDICAL ASSOCIATES, for the practice of medicine.

7

34.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, DESIREE A. CLARKE, M.D., was acting within the course and scope of her employment, agency, and/or association with the Defendant, WEST CARE MEDICAL ASSOCIATES

35.    Upon information and belief, and at all times hereinafter mentioned, the Defendant, WEST CARE MEDICAL ASSOCIATES, was a medical office that through its owners, agents, employees, physicians, nurses and other medical staff, managed, controlled, maintained, and operated said medical office that rendered the care and treatment to the Plaintiff decedent, KICIA GRACE, and other ailing or injured persons, and did hold itself out to the public as furnishing facilities where individuals could be seen as patients and could be treated by competent nurses, physicians, surgeons, and/or other healthcare providers for which it was and still is paid sums of money.

36.    Upon information and belief, and at all times hereinafter mentioned, the Defendants, WEST CARE MEDICAL ASSOCIATES, by and through its officials, agents, servants, and/or employees, was under a duty and obligation to provide medical treatment and medical advice, and instruction to Plaintiff, KICIA GRACE, and other patients receiving treatment at said medical office and/or by and trhough said Defendants.

37.    The Plaintiff, KICIA GRACE, became a patient of the Defendants, DESIREE A. CLARKE, M.D., and WEST CARE MEDICAL ASSOCIATES in or about October, 2002, and remained under the continuous care and treatment of Defendants until on or about February 16, 2005.

38.    Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., is incorporated in the State of Delaware, with its principle place of business in Raritan, New Jersey.

39.     Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., has transacted and conducted business in the State of New York.

40.     Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., has derived substantial revenue from goods and products used in the state of New York.

41.     Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

42.     Upon information and belief, and at all relevant times, Defendant, ORTHO-MCNEIL was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Patch for use as a transdermal birth control medication.

43.     Upon information and belief, Defendant, JOHNSON & JOHNSON, is incorporated in the State of New Jersey, with its principle place of business in New Brunswick, New Jersey.

44.     Upon information and belief, Defendant, JOHNSON & JOHNSON, has transacted and conducted business in the State of New York.

45.     Upon information and belief, Defendant, JOHNSON & JOHNSON, has derived substantial revenue from goods and products used in the State of New York.

46.     Upon information and belief, Defendant, JOHNSON & JOHNSON, expected or should have expected their acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce.

47.     Upon information and belief, and at all relevant times, Defendant, JOHNSON & JOHNSON was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the Patch for use as a transdermal birth control medication.

9

48.    Upon information and belief, Defendant, JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., is incorporated in the State of

New Jersey, with its principle place of business in Raritan, New Jersey.

49.    Upon information and belief, Defendant, JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., has transacted and conducted

business in the State of New York.

50.    Upon information and belief, Defendant, JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., has derived substantial

revenue from goods and products used in the State of New York.

51.    Upon information and belief, Defendant, JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., expected or should have

expected their acts to have consequences within the State of New York, and derived substantial

revenue from interstate commerce.

52.    Upon information and belief, and at all relevant times, Defendant, JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was in the

business of and did design, research, manufacture, test, advertise, promote, market, sell, and

distribute the Patch for use as a transdermal birth control medication.

## FACTUAL BACKGROUND

53.    At all relevant times, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. were in the business of and did design, research, manufacture, test,

advertise, promote, market, sell, distribute, and/or have recently acquired the Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Patch for use as a transdermal birth control medication.

54.    Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC., was formed by a 1993 merger of Ortho Pharmaceutical Corporation and McNeil Pharmaceutical.

55.    Ortho Pharmaceutical Corporation was acquired or created by Johnson & Johnson in or about 1940.

56.    Johnson & Johnson acquired McNeil Laboratories, Inc. in 1959.

57.    Upon information and belief, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., ORTHO-McNEIL PHARMACEUTICAL, INC. and JOHNSON & JOHNSON, prior to the 1993 merger have been involved in the research and development of forms of contraception since 1931 and hormone combination contraception as early as 1957.

58.    Upon information and belief, Defendant, ORTHO-McNEIL, PHARMACEUTICAL, INC. is a wholly owned subsidiary of Defendant, JOHNSON & JOHNSON.

59.    Upon information and belief, Defendant, JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., was formed by a 2001 merger of The Janssen Research Foundation and the R.W. Johnson Pharmaceutical Research Institute.

60.    Upon information and belief, in 2002, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of eleven

billion dollars ($11,000,000,000.00).

61.     Upon information and belief, in 2003, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of thirteen

billion dollars ($13,000,000,000.00).

62.     Upon information and belief, in 2004, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. had sales in the United States

from their Pharmaceutical Segment of Business, which includes the Patch, in excess of fourteen

billion dollars ($14,000,000,000.00).

63.     Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL, INC.

is the world's leading manufacturer of prescription contraceptives.

64.     Upon information and belief, Defendant, ORTHO-McNEIL PHARMACEUTICAL,

INC., is the current market leader in oral and Patch contraceptive products.

65.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

utilized direct-to-consumer adverting to market, promote, and/or advertise the Patch.

66.     Upon information and belief, Defendants ORTHO-McNEIL PHARMACEUTICAL,

INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL

RESEARCH & DEVELOPMENT, L.L.C.'s Patch has become one of the most popular forms of

birth control and the fastest growing hormonal contraceptive in the United States since 2003.

67.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'s Patch received approval from The Food and Drug Administration (hereinafter referred to as "FDA") as a drug on or about November 20, 2001.

68.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. failed to appropriately and adequately warn Plaintiff, and her physicians, hospitals, and the FDA, of the serious and dangerous risks involved in using Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'s Patch which include but are not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

69.     Upon information and belief, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. misrepresented the known risks inherent in the use of the Ortho Evra transdermal system.

70.     Indeed, as recently as November 10, 2005 the FDA approved updated labeling for the Ortho Evra contraceptive patch to warn healthcare providers and patients that the Patch exposes

women to about 60 percent more total estrogen in their blood than if they were taking a typical

birth control pill containing 35 micrograms of estrogen – information the Defendants ORTHO-

McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. never disclosed

before this mandated warning change by the FDA.

71.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

knew, or should have known, of the above-mentioned risks based upon the state of knowledge of

the Patch as it existed at that time, and upon generally accepted medical and research standards

and principles.

72.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

made certain claims which were distributed and circulated to the medical and healthcare

professions, and to the general public, stating that the Patch was as safe as birth control pills.

73.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

knew, or should have known, that there is no epidemiologic data available to determine whether

safety and efficacy with the transdermal route of administration would be different than the oral

route.

74.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

were careless and negligent in the manufacturing, testing, selling, distribution, merchandising,

14

advertising, marketing, promotion, compounding, packaging, fabrication, warning, analyzing, marketing, and recommendation of the Patch.

75.     By reason of the foregoing, Plaintiff has developed and/or is at extremely high risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

76.     Plaintiff has endured and continue to suffer the mental anguish and psychological trauma of living with the knowledge that she has and/or may suffer serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

77.     By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to her use of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and

JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S

Ortho Evra Patches.

### FIRST CAUSE OF ACTION
### (MEDICAL MALPRACTICE)

78.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in each of the foregoing paragraphs inclusive, with the same force and effect as if

more fully set forth herein.

79.     Upon information and belief, and at all times hereinafter mentioned, the

Defendants, WEST CARE MEDICAL ASSOCIATES and/or DESIREE A. CLARKE, M.D., by

and through its officials, agents, servants, and/or employees, was under a duty and obligation to

provide medical treatment and medical advice, and instruction to Plaintiff decedent, KICIA

GRACE, and other patients receiving treatment at said medical office.

80.     The Plaintiff, KICIA GRACE, became a patient of the Defendants, DESIREE A.

CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES in or about October, 2002,

and remained under the continuous care and treatment of Defendants until on or about February

16, 2005.

81.     Upon information and belief, and at all times hereinafter mentioned, the

Defendant, DESIREE A. CLARKE, M.D., represented and warranted to the Plaintiff, KICIA

GRACE, that she was competent to perform all the requisite care and treatment regarding her

condition, and/or the procedures that she was going to perform and/or failed to perform, and that

she possessed the necessary standard of learning, skill, care, knowledge and diligence of other

physicians.

82.     That on or before May 13, 2004, Plaintiff, KICIA GRACE, was under the care and supervision of Defendants, DESIREE A. CLARKE, M.D., and WEST CARE MEDICAL ASSOCIATES.

83.     That on or before May 13, 2004, Plaintiff, KICIA GRACE, sought medical care, treatment and attention from Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES.

84.     That the medical care, treatment, services and advice rendered to Plaintiff by Defendants, their agents, servants, licensees and/or employees, was negligently, recklessly, improperly and carelessly performed and was rendered in a manner which departed from good and accepted medical practice and constituted medical malpractice, including but not limited to the following: the failure to properly interpret diagnostic tests; the failure to properly advise Plaintiff regarding birth control methods and/or options, and accordingly; including the prescription, recommendation, and/or dispensing of the Orth Evra Brith Control Patch to Plaintiff, given the contraidindation s to do so in this Plaintiff; further in failing to prescribe proper medication, to prescribe medication in the proper dosage, and to monitor the effects of such medication; the failure to advise Plaintiff of contraindications given her past medical history with regard to hormonal birth control methods and/or options, including all associated risks, including thoseposed by estrogen and/or un-regulated and/or unknown levels of estrogen; and for continuously failing to adequately monitor, treat, and care for Plaintiff, KICIA GRACE, during the continuous treatment of Plaintiff decedent despite numerous regular check-ups up through and including February, 2005.

85.     During the aforesaid care and treatment by DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES, the Defendants, DESIREE A. CLARKE, M.D., and/or

WEST CARE MEDICAL ASSOCIATES, and/or their agents, servants, partners, and employees were negligent in the rendering of the aforesaid medical care and treatment they rendered, and/or failed to render to Plaintiff, KICIA GRACE, and Defendants deviated from standard and accepted medical practices and procedures.

86.     That the Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES, carelessly, recklessly and negligently failed to properly test, diagnose, treat and advise Plaintiff, KICIA GRACE, which adversely affected the health, well-being and future treatment of the Plaintiff, herein.

87.     As a direct and proximate result of the foregoing negligence and medical malpractice of Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES, the Plaintiff, KICIA GRACE, sustained serious and permanent personal injuries, and had been caused to suffer severe physical pain, mental anguish, and death as a result thereof, and that Plaintiff, KICIA GRACE had been incapacitated from her regular activities, including but not limited to social and economic activities.

88.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

89.    By reason of the foregoing, Plaintiff, KICIA GRACE, is entitled to recover all of her damages from the Defendants, the amount of which exceeds the jurisdictional limits of all lower Courts.

## SECOND CAUSE OF ACTION ON
## (LACK OF INFORMED CONSENT)

90.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

91.    There were certain risks, hazards, dangers and alternatives to the aforesaid prescribed Ortho Evra birth control patch given to the Plaintiff, KICIA GRACE.

92.    The Plaintiff, KICIA GRACE, had no knowledge of the risks, hazards, or dangers of the aforesaid prescribed Ortho Evra birth control patch.

93.    The Plaintiff, KICIA GRACE, had the right to know of the aforesaid risks, hazards, and dangers of the aforesaid prescribed Ortho Evra birth control patch.

94.    The Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL ASSOCIATES had a duty to warn the Plaintiff, KICIA GRACE, of the risks, hazards, dangers and alternatives to the Ortho Evra birth control patch, especially and specifically given Plaintiff's condition of sickle cell trait, for which the Patch is contraindicated, and which was give to Platiff by the Defendants, DESIREE A. CLARKE, M.D. and/or WEST CARE MEDICAL ASSOCIATES, their agents, servants, partners, members, and/or employees.

95.    The Defendants, DESIREE A. CLARKE, M.D. and/or WEST CARE MEDICAL ASSOCIATES failed to warn or advise the Plaintiff, KICIA GRACE, of the aforesaid risks, hazards, dangers and alternatives to the aforesaid medical care and treatment or lack thereof.

96.     The Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL

ASSOCIATES failed to obtain the informed consent of the Plaintiff, KICIA GRACE, to the

aforesaid medical care and treatment or lack thereof.

97.     Had the Plaintiff, KICIA GRACE, or any reasonable person, been informed of the

aforesaid, she would not have consented to the aforesaid medical care and treatment or lack

thereof.

98.     As a direct and proximate result of the foregoing negligence and medical

malpractice of Defendants, DESIREE A. CLARKE, M.D., and/or WEST CARE MEDICAL

ASSOCIATES, the Plaintiff, KICIA GRACE, sustained serious and permanent personal injuries,

and had been caused to suffer severe physical pain, mental anguish, and death as a result thereof,

and that Plaintiff, KICIA GRACE had been incapacitated from her regular activities, including

but not limited to social and economic activities.

99.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to

suffer and/or are at a greatly increased risk of serious and dangerous side effects including but

not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood

clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including

diminished enjoyment of life, a future of high risk pregnancies, any and all life complications

created by Plaintiff's inability to use any form of prescription contraception for the duration of

her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and

fear of developing any of the above named health consequences.

100.   By reason of the foregoing, Plaintiff, KICIA GRACE, is entitled to recover all of her

damages from the Defendants, the amount of which exceeds the jurisdictional limits of all lower

Courts.

**THIRD CAUSE OF ACTION
(NEGLIGENCE)**

101.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in each of the foregoing paragraphs inclusive, with the same force and effect as if

more fully set forth herein.

102.   Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing,

supplying, promoting, packaging, sale and/or distribution of the Patch into the stream of

commerce, including a duty to assure that the product would not cause users to suffer

unreasonable, dangerous side effects.

103.   Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

failed to exercise ordinary care in the designing, researching, manufacturing, marketing,

supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or

distribution of the Patch into interstate commerce in that Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew or should have known

that using the Patch created a high risk of unreasonable, dangerous side effects, including but not

limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots,

21

and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including

diminished enjoyment of life, a future of high risk pregnancies, any and all life complications

created by Plaintiff's inability to use any form of prescription contraception for the duration of

her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and

fear of developing any of the above named health consequences.

104.    The negligence of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C., their agents, servants, and/or employees, included but was not limited

to the following acts and/or omissions:

> (a)    Manufacturing, producing, promoting, formulating, creating, and/or designing the Patch without thoroughly testing it;
>
> (b)    Manufacturing, producing, promoting, formulating, creating, and/or designing the Patch without adequately testing it;
>
> (c)    Not conducting sufficient testing programs to determine whether or not the aforesaid Patch was safe for use; in that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. herein knew or should have known that the Patch was unsafe and unfit for use by reason of the dangers to its users;
>
> (d)    Selling the Patch without making proper and sufficient tests to determine the dangers to its users;
>
> (e)    Negligently failing to adequately and correctly warn the Plaintiff, the public, the medical and healthcare profession, and the FDA of the dangers of the Patch;
>
> (f)    Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, the Patch;

(g)    Failing to test the Patch and/or failing to adequately, sufficiently and properly test the Patch.

(h)    Negligently advertising and recommending the use of the aforesaid Patch without sufficient knowledge as to its dangerous propensities;

(i)    Negligently representing that said Patch was safe for use for its intended purpose, when, in fact, it was unsafe;

(j)    Negligently representing that the Patch had equivalent safety and efficacy as other forms of birth control/contraception;

(k)    Negligently designing the Patch in a manner which was dangerous to its users;

(l)    Negligently manufacturing the Patch in a manner which was dangerous to its users;

(m)    Negligently producing the Patch in a manner which was dangerous to its users;

(n)    Negligently assembling the Patch in a manner which was dangerous to its users;

(o)    Concealing information concerning FDA warnings from the Plaintiff in knowing that the Patch was unsafe, dangerous, and/or non-conforming with FDA regulations;

(p)    Improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of the Patch compared to other forms of contraception.

105.   Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. under-reported, underestimated and downplayed the serious dangers of the Patch.

106.   Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

negligently compared the safety risk and/or dangers of the Patch with other forms of

contraception, including but not limited to oral contraception, namely, "the Pill."

107.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

were negligent in the designing, researching, supplying, manufacturing, promoting, packaging,

distributing, testing, advertising, warning, marketing and sale of the Patch in that they:

(a)    Failed to use due care in designing and manufacturing the Patch so as to avoid the aforementioned risks to individuals when the Patch was used for contraceptive purposes;

(b)    Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of the Patch;

(c)    Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of the Patch;

(d)    Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning the Patch;

(e)    Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

(f)    Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Patch;

(g)    Failed to warn Plaintiff, prior to actively encouraging the sale of the Patch, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

(h)    Were otherwise careless and/or negligent.

24

108.     Despite the fact that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. knew or should have known that the Patch caused unreasonably

dangerous side effects, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON

& JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. continued and continue to market, manufacture, distribute and/or sell

the Patch to consumers, including the Plaintiff.

109.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

knew or should have known that consumers such as the Plaintiff would forseeably suffer injury

as a result of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S failure to exercise ordinary care, as set forth above.

110.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT,

L.L.C.'S negligence was the proximate cause of Plaintiff's injuries, harm and economic loss

which they suffered and/or will continue to suffer.

111.     As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to

suffer and/or are at a greatly increased risk of serious and dangerous side effects including but

not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood

clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including

diminished enjoyment of life, a future of high risk pregnancies, any and all life complications

created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

112.    As a result of the foregoing acts and omissions, the Plaintiff requires and will require health care and services, and did incur medical, health, incidental and related expenses.  Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

113.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FOURTH CAUSE OF ACTION
## (STRICT PRODUCTS LIABILITY)

114.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

115.    At all times herein mentioned, the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. who have

designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed the Patch as hereinabove described that was used by the Plaintiff.

116.    That the Patch was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

117.    At those times, the Patch was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, the Plaintiff herein.

118.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the Patch.

119.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was defective in design and/or formulation, in that, when it left the hands of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

27

120.    At all times herein mentioned, the Patch was in a defective condition and unsafe, and
Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and
JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.
knew or had reason to know that said product was defective and unsafe, especially when used in
the form and manner as provided by the Defendants ORTHO-McNEIL PHARMACEUTICAL,
INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL
RESEARCH & DEVELOPMENT, L.L.C.

121.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,
and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.
knew, or should have known that at all times herein mentioned its Patch was in a defective
condition, and was and is inherently dangerous and unsafe.

122.    At the time of the Plaintiff's use of the Patch, the Patch was being used for the purposes
and in a manner normally intended, namely for birth control and/or regulation of menses.

123.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,
and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.
with this knowledge voluntarily designed its Patch in a dangerous condition for use by the
public, and in particular the Plaintiff.

124.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,
and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.
had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

125.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,
and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.
created a product unreasonably dangerous for its normal, intended use.

126.     The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was manufactured defectively in that said Patch left the hands of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in a defective condition and was unreasonably dangerous to its intended users.

127.     The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. reached their intended users in the same defective and unreasonably dangerous condition in which the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S Patch was manufactured.

128.     Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular, and Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. are therefore strictly liable for the injuries sustained by the Plaintiff.

129.     The Plaintiff could not by the exercise of reasonable care, have discovered the Patch's defects herein mentioned and perceived its danger.

130.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was defective due to inadequate warnings or instructions as the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew or should have known that the product created a risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. failed to adequately warn of said risk.

131.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was defective due to inadequate warnings and/or inadequate testing.

132.    The Patch designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. knew or should have known of the risks of serious side effects including but not limited to stroke, transient ischemic attack ("TIA"), embolisms, blood clots, heart attacks, coma, and death, as well as other severe and permanent health consequences from the Patch, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, the Patch.

133. By reason of the foregoing, the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. have become strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, the Patch.

134. Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S defective design, manufacturing defect, and inadequate warnings of the Patch were acts that amount to willful, wanton, and/or reckless conduct by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

135. That said defects in Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S Patch were a substantial factor in causing Plaintiff's injuries.

136. As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

137.    As a result of the foregoing acts and omissions the Plaintiff require and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

138.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## FIFTH CAUSE OF ACTION
## (BREACH OF EXPRESS WARRANTY)

139.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

140.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. expressly warranted that the Patch was safe and well accepted by users.

141.    The Patch does not conform to these express representations because the Patch is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

142.    As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

143.    Plaintiff did rely on the express warranties of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. herein.

144.    Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. for use of the Patch in recommending, prescribing, and/or dispensing the Patch.

145.    The Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. herein breached the aforesaid express warranties, as their Patch was defective.

146.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. expressly represented to Plaintiff, her physicians, healthcare providers, and/or the FDA that the Patch was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with the Pill, that

33

the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

147.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the Patch was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

148.    As a result of the foregoing acts and/or omissions the Plaintiff, was and still is caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

149.    As a result of the foregoing acts and omissions the Plaintiff require and/or will require healthcare and services and did incur medical, psychiatric, health, incidental and related expenses.  Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

34

150.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## SIXTH CAUSE OF ACTION
## (BREACH OF IMPLIED WARRANTIES)

151.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

152.    At all times herein mentioned, the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the Patch and/or have recently acquired the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. who have manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the Patch, for use in contraception.

153.    At the time Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. marketed, sold, and distributed the Patch for use by Plaintiff, Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

knew of the use for which the Patch was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

154.    The Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. impliedly represented and warranted to the users of the Patch and her physicians, healthcare providers, and/or the FDA that the Patch was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

155.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that the Patch was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

156.    Plaintiff, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

157.    Plaintiff and her physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. as to whether the Patch was of merchantable quality and safe and fit for its intended use.

158.    The Patch was injected into the stream of commerce by the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

36

159.    The Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. herein breached the aforesaid implied warranties, as their Patch was not fit for its intended purposes and uses.

160.    As a result of the foregoing acts and omissions, the Plaintiff was and/or still is caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

161.    As a result of the foregoing acts and omissions the Plaintiff require and will require healthcare and services and did incur medical, health, incidental and related expenses.  Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

162.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

37

## SEVENTH CAUSE OF ACTION AS
## (FRAUDULENT MISREPRESENTATION)

163.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

164.    The Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that said product, the Patch, had been tested and was found to be safe and/or effective for contraceptive purposes.

165.    Those representations made by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were, in fact, false.

166.    When said representations were made by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., they knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

167.    These representations were made by said Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe,  dispense and/or purchase said

38

product, the Patch, for use as a means of birth control, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff herein.

168.    At the time the aforesaid representations were made by the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. and, at the time the Plaintiff used the Patch, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

169.    In reliance upon said representations, the Plaintiff was induced to and did use the Patch, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

170.    Said Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew and were aware or should have been aware that the Patch had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

171.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew or should have known that the Patch had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

172.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

brought the Patch to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiff.

173.    As a result of the foregoing acts and omissions, the Plaintiff was and still is caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

174.    As a result of the foregoing acts and omissions the Plaintiff require and/or will require health care and services, and did incur medical, health, incidental and related expenses.  Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

175.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## EIGHTH CAUSE OF ACTION AS
## (FRAUDULENT CONCEALMENT)

176.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in each of the foregoing paragraphs inclusive, with the same force and effect as if

more fully set forth herein.

177.    At all times during the course of dealing between Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. and Plaintiff, and/or

Plaintiff's healthcare providers, and/or the FDA, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. misrepresented the safety of

the Patch for its intended use.

178.    At all times during the course of dealing between Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. and Plaintiff, and/or

Plaintiff's healthcare providers, and/or the FDA, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. misrepresented the levels of

estrogen delivered by the Patch.

179.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

knew or were reckless in not knowing that its representations were false.

180.    In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA,

Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and

JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

fraudulently concealed and intentionally omitted the following material information:

    (a)   that the Patch was not as safe as other forms of contraception;

    (b)   that the risks of adverse events with the Patch were higher than those with other forms of birth control, including but not limited to oral contraception;

    (c)   that the risks of adverse events with the Patch were not adequately tested and/or known by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.;

    (d)   that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were aware of dangers in the Patch, in addition to and above and beyond those associated with oral birth control methods;

    (e)   that the Patch was defective, and that it caused dangerous side effects, including but not limited to higher incidence of stroke, transient ischemic attack ("TIA"), embolisms, blood clots, heart attacks, coma, and death, as well as other severe and permanent health consequences, in a much more and significant rate than other forms of birth control, including but not limited to oral birth control;

    (f)   that patients needed to be monitored more regularly than normal while using the Patch;

    (g)   that the Patch was manufactured negligently;

    (h)   that the Patch was manufactured defectively;

    (i)   that the Patch was manufactured improperly;

    (j)   that the Patch was designed negligently;

    (k)   that the Patch was designed defectively; and

    (l)   that the Patch was designed improperly.

    (m)  that the Patch delivered safe levels of estrogen

    (n)  that the Patch delivered the same, or close to the same levels of estrogen as the Pill

181.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were under a duty to disclose to Plaintiff, and her physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the Patch, including but not limited to the heightened risks of a transdermal route of administration of the hormones contained in Ortho Evra.

182.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Patch, including the Plaintiff, in particular.

183.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S concealment and omissions of material facts concerning, inter alia, the safety of the Patch was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, and her physicians, hospitals and healthcare providers into reliance, continued use of the Patch, and actions thereon, and to cause them to purchase, prescribe, and/or dispense the Patch and/or use the product.

184.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew that Plaintiff, and her physicians, hospitals, healthcare providers, and/or the FDA had no

way to determine the truth behind Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S concealment and omissions, and that these included material

omissions of facts surrounding the Patch, as set forth herein.

185.    Plaintiff, as well as her doctors, healthcare providers, and/or hospitals reasonably relied

on facts revealed which negligently, fraudulently and/or purposefully did not include facts that

were concealed and/or omitted by Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.

186.    As a result of the foregoing acts and omissions the Plaintiff was and still is caused to

suffer and/or are at a greatly increased risk of serious and dangerous side effects including but

not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood

clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including

diminished enjoyment of life, a future of high risk pregnancies, any and all life complications

created by Plaintiff's inability to use any form of prescription contraception for the duration of

her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and

fear of developing any of the above named health consequences.

187.    As a result of the foregoing acts and omissions the Plaintiff require and will require

healthcare and services and did incur medical, health, incidental and related expenses. Plaintiff

are informed and believe and further allege that Plaintiff will in the future be required to obtain

further medical and/or hospital care, attention, and services.

188.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN

MILLION DOLLARS ($10,000,000.00).


## NINTH CAUSE OF ACTION
## (NEGLIGENT MISREPRESENTATION)

189.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in each of the foregoing paragraphs inclusive, with the same force and effect as if

more fully set forth herein.

190.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

had a duty to represent to the medical and healthcare community, and to the Plaintiff, the FDA

and the public in general that said product, the Patch, had been tested and found to be safe and

effective for birth control.

191.    The representations made by Defendants ORTHO-McNEIL PHARMACEUTICAL,

INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL

RESEARCH & DEVELOPMENT, L.L.C. were, in fact, false.

192.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

failed to exercise ordinary care in the representation of the Patch, while involved in its

manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product

into interstate commerce in that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. negligently misrepresented the Patch's high risk of unreasonable, dangerous side effects.

193.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. breached their duty in representing the Patch's serious side effects to the medical and healthcare community, to the Plaintiff, the FDA and the public in general.

194.    As a result of the negligent misrepresentations of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. set forth hereinabove, said Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. knew and were aware or should have known that the Patch had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature.

195.    As a result of the foregoing acts and omissions the Plaintiff require and will require health care and services and did incur medical, health, incidental and related expenses.  Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

46

196.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN

MILLION DOLLARS ($10,000,000.00).

## TENTH CAUSE OF ACTION
### (FRAUD AND DECEIT)

197.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint

contained in each of the foregoing paragraphs inclusive, with the same force and effect as if

more fully set forth herein.

198.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

conducted research and used the Patch as part of their research.

199.    As a result of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S research and testing, or lack thereof, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. blatantly and intentionally

distributed false information, including but not limited to assuring the public, the Plaintiff, her

doctors, hospitals, healthcare professionals, and/or the FDA that the Patch was safe for use as a

means of providing birth control.

200.    As a result of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S research and testing, or lack thereof, Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally omitted certain

results of testing and research to the public, healthcare professionals, and/or the FDA, including

the Plaintiff.

201.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

had a duty when disseminating information to the public to disseminate truthful information and

a parallel duty not to deceive the public and the Plaintiff, as well as her healthcare providers

and/or the FDA.

202.    The information distributed to the public, the FDA, and the Plaintiff by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., including but not

limited to reports, press releases, advertising campaigns, television commercials, print ads,

magazine ads, billboards, and all other commercial media contained material representations of

fact and/or omissions.

203.    The information distributed to the public, the FDA, and the Plaintiff by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally

included representations that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S Patch was safe for use as a form of birth control.

204.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally

included representations that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S Patch carried the same risks, hazards, and/or dangers as oral birth

control, such as the Pill.

205.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally

included representations that Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C.'S Patch delivered the same levels of estrogen as oral birth control,

such as the Pill.

206.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally

included false representations that the Patch was not injurious to the health and/or safety of its

intended users.

207.    The information distributed to the public, the FDA, and the Plaintiff, by Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. intentionally

included false representations that the Patch was as potentially injurious to the health and/or

safety of its intended as oral forms of birth control, such as the Pill.

208.    These representations were all false and misleading.

49

209.    Upon information and belief, Defendants ORTHO-McNEIL PHARMACEUTICAL,

INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL

RESEARCH & DEVELOPMENT, L.L.C. intentionally suppressed, ignored and disregarded test

results not favorable to the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C., and results that demonstrated that the Patch was not safe as a means

of contraception and/or was not as safe as other means of contraction, including but not limited

to oral conception, such as the Pill.

210.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

intentionally made material representations to the FDA and the public, including the medical

profession, and the Plaintiff, regarding the safety of the Patch, specifically but not limited to the

Patch not having dangerous and serious health and/or safety concerns.

211.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

intentionally made material representations to the FDA and the public in general, including the

medical profession, and the Plaintiff, regarding the safety of the Patch, specifically but not

limited to the Patch being as safe a means of birth control as forms of oral contraception.

212.    That it was the purpose of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC.,

JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. in making these representations to deceive and defraud the public, the

FDA, and/or the Plaintiff, to gain the confidence of the public, healthcare professionals, the

FDA, and/or the Plaintiff, to falsely ensure the quality and fitness for use of the Patch and induce

50

the public, and/or the Plaintiff to purchase, request, dispense, prescribe, recommend, and/or continue to use the Patch.

213.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Patch was fit and safe for use as birth control.

214.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that the Patch was fit and safe for use as birth control and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with oral contraceptives, such as the Pill.

215.    That Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that the Patch did not present serious health and/or safety risks.

216.    That Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiff that the Patch did not present health and/or safety risks greater than oral forms of contraception, such as the Pill.

217.    That these representations and others made Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. were false when made, and/or

were made with a pretense of actual knowledge when knowledge did not actually exist, and/or

were made recklessly and without regard to the actual facts.

218.    That these representations and others, made by Defendants ORTHO-McNEIL

PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON

PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., were made with the intention

of deceiving and defrauding the Plaintiff, including her healthcare professionals and/or the FDA,

and were made in order to induce the Plaintiff and/or her healthcare professionals to rely upon

misrepresentations and caused the Plaintiff to purchase, use, rely on, request, dispense,

recommend, and/or prescribe the Patch.

219.    That Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C., recklessly and intentionally falsely represented the dangerous and

serious health and/or safety concerns of the Patch to the public at large, the Plaintiff in particular,

for the purpose of influencing the marketing of a product known to be dangerous and defective

and/or not as safe as other alternatives, including oral contraception, such as the Pill.

220.    That Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. willfully and intentionally failed to disclose the material facts

regarding the dangerous and serious safety concerns of the Patch by concealing and suppressing

material facts regarding the dangerous and serious health and/or safety concerns of the Patch.

221.    That Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON &

JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH &

DEVELOPMENT, L.L.C. willfully and intentionally failed to disclose the truth, failed to

disclose material facts and made false representations with the purpose and design of deceiving

and lulling the Plaintiff, as well as her healthcare professionals into a sense of security so that

Plaintiff would rely on the representations and purchase, use and rely on the Patch and/or that her

healthcare providers would dispense, prescribe, and/or recommend the same.

222.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT,

L.L.C., through their public relations efforts, which included but were not limited to the public

statements and press releases, knew or should have known that the public, including the Plaintiff,

as well as her healthcare professionals  would rely upon the information being disseminated.

223.    Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON,

and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.

utilized direct to consumer adverting to market, promote, and/or advertise the Patch.

224.    That the Plaintiff and/or her healthcare professionals did in fact rely on and believe the

Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and

JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S

representations to be true at the time they were made and relied upon the representations as well

as the superior knowledge of birth control, including but not limited to a transdermal birth

control method, like the Patch, and was thereby induced to purchase, use and rely on Defendants

ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON &

JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S Patch.

225.    That at the time the representations were made, the Plaintiff and/or her healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of the Patch.

226.    That the Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C., nor could the Plaintiff with reasonable diligence have discovered the true facts.

227.    That had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of the Patch, Plaintiff would not have purchased, used and/or relied on Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S Patch.

228.    That the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C.'S aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiff.

229.    As a result of the foregoing acts and omissions Plaintiff was caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including but not limited to stroke, and/or transient ischemic attack ("TIA"), and/or embolisms, and/or blood clots, and/or heart attack, and/or coma, and/or death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, a future of high risk pregnancies, any and all life complications created by

Plaintiff's inability to use any form of prescription contraception for the duration of her life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

230.    As a result of the foregoing acts and omissions the Plaintiff require and will require health care and services and did incur medical, health, incidental and related expenses. Plaintiff are informed and believe and further allege that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

231.    By reason of the foregoing, Plaintiff has been damaged as against the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. in the sum of TEN MILLION DOLLARS ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    For any other causes of action and/or claims as may be compensable under local laws and/or statutes;

3.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants ORTHO-McNEIL PHARMACEUTICAL, INC., JOHNSON & JOHNSON, and JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, L.L.C. and deter future similar conduct;

4.    Awarding Plaintiff reasonable attorneys fees;

5.    Awarding Plaintiff the costs of these proceedings; and

6.    Such other and further relief as this Court deems just and proper.


Dated: New York, New York
       April 20, 2007

                                    DOUGLAS & LONDON, P.C.


                                    By: _____
                                    MICHAEL A. LONDON
                                    111 John Street, Suite 1400
                                    New York, New York 10038
                                    Ph: (212) 566-7500
                                    Fax: (212) 566-7501
                                    Email: mlondon@douglasandlondon.com

56

## CERTIFICATE OF MERIT

STATE OF NEW YORK      )
                              s.s.:
COUNTY OF NEW YORK  )

       **MICHAEL A. LONDON,** an attorney duly admitted to practice in the Courts of the

State of New York, hereby affirms as follows pursuant to CPLR 2106.

       I have reviewed the facts of this case and consulted with at least one physician who is

licensed to practice medicine in this state and who I reasonably believe is knowledgeable in the

relevant issue involved in this action, and I have concluded on the basis of such review and

consultation that there is a reasonable basis for the commencement of this action.

Dated: New York, New York
       April 20, 2007

                                               **MICHAEL A. LONDON, ESQ.**

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK )
          s.s.:
COUNTY OF NEW YORK )

  **MICHAEL A. LONDON**, an attorney and counselor at law, duly admitted to practice in

the Courts of the State of New York and a member of the **DOUGLAS & LONDON, P.C.**,

attorneys for Plaintiff herein, affirms the following to be true under penalties of perjury:

  I have read the foregoing **COMPLAINT** and know the contents thereof, and upon

information and belief, I believe the matters alleged therein to be true.

  The source of your deponent's information and the grounds of my belief are

communications, papers, reports and investigations contained in my file.

Dated: New York, New York
    April 20, 2007

                 MICHAEL A. LONDON, ESQ.

58