UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KICIA GRACE                                                        **Case No. 07-CV-4081**

                                            Plaintiff,

                                                                   **NOTICE OF MOTION**
            -against-                                              **TO REMAND**

JOHNSON & JOHNSON, INC., ORTHO-
MCNEIL PHARMACEUTICAL, INC., JOHNSON &
JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C; DESIREE A. CLARK, M.D.
and WEST CARE MEDICAL ASSOCIATES,

                            Defendants.
-------------------------------------------------------------X

**PLEASE TAKE NOTICE** that upon the annexed Memorandum of Law and

annexed Affidavit of **STEPHANIE O'CONNOR, ESQ.**, sworn to on June 21, 2007,

and the exhibits annexed hereto, the plaintiff will move this Court at the United

States District Court, Southern District of New York, at the courthouse located at 500

Pearl Street, New York, NY 10007, on _____, ____, 2007, at 10:00a.m. in the

forenoon of that day, or as soon thereafter as counsel may be heard, for an Order:

> 1)        Pursuant to 28 U.S.C. 1447, remanding the above-entitled
>           action, from the United States District Court, Southern District
>           of New York to the New York State Supreme Court, New York
>           County, the original venue of the above-entitled action from
>           which it was removed pursuant to the defendants' Notice of
>           Removal filed on or about May 24, 2000, on the ground that
>           this Honorable Court lacks subject matter jurisdiction to hear
>           this case; and

2)    Granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
       June 21, 2007

Yours, etc.,

DOUGLAS & LONDON, P.C.

Stephanie O'Connor (SOC-0813)
*Attorneys for Plaintiff*
111 John Street, Suite 1400
New York, New York 10038
(212) 566-7500

TO:    Robert W. Sparks
       Debra D. O'Gorman
       Patrick G. Broderick
       DECHERT L.L.P.
       30 Rockefeller Plaza
       New York, New York 10012
       *Attorneys for Defendants Johnson & Johnson, Johnson & Johnson*
       *Pharmaceutical Research and Development, L.L.C., and Ortho-McNeil*
       *Pharmaceutical, Inc.*

       Desiree A. Clarke, M.D
       c/o West Care Medical Associates
       327 Central Park West
       New York, New York 10025

       West Care Medical Associates
       327 Central Park West
       New York, New York 10025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

KICIA GRACE                                              **Case No. 07-CV-4081**

             Plaintiff,

                                          **AFFIDAVIT OF**
        -against-                        **STEPHANIE O'CONNOR**

JOHNSON & JOHNSON, INC., ORTHO-
MCNEIL PHARMACEUTICAL, INC., JOHNSON &
JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C; DESIREE A. CLARK, M.D.
and WEST CARE MEDICAL ASSOCIATES,

                   Defendants.
-----------------------------------------------------------X

STATE OF NEW YORK   )

COUNTY OF NEW YORK) ss.:

      Stephanie O'Connor, an attorney admitted to practice in the Courts of the State of

New York, hereby affirms the truth of the following, under penalty of perjury,:

      1.     I am associated with the law firm of Douglas and London, P.C., counsel for

plaintiff, and as such, I am familiar with the facts and proceedings set forth herein.  I

submit this affidavit in support of the within motion by Plaintiff for remand of these

proceedings back to state court based on this Court's lack of subject matter jurisdiction

to hear this claim.

      2.     A copy of plaintiff's medical records for Dr. Desiree A. Clark and West Care

Medical Associates is attached hereto as Exhibit A.

      3.     A copy of plaintiff's medical records for Beth Israel Medical Center is

attached hereto as Exhibit B.

      4.     A copy of the October 2006 Ortho-Evra label change that was published by

Johnson & Johnson, Inc., Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson

Pharmaceutical Research & Development L.L.C. and disseminated to physicians is attached hereto as Exhibit C.

5.    A copy of the plaintiff's Summons and Complaint filed on April 23, 2007 is attached hereto as Exhibit D.

WHEREFORE, it is respectfully requested that the Court grand Plaintiff's Motion to Remand, and such other relief as the Court deems just and proper under the circumstances.

STEPHANIE O'CONNOR

Sworn to before me this

21st day of June, 2007

NOTARY PUBLIC

Erika M. Negrin
Notary Public, State Of New York
No. 01NE6009021
Qualified in Kings County
Commission Expires September 22, 20 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KICIA GRACE                                              **Case No. 07-CV-4081**

                        Plaintiff,

                -against-

JOHNSON & JOHNSON, INC., ORTHO-
MCNEIL PHARMACEUTICAL, INC., JOHNSON &
JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C; DESIREE A. CLARK, M.D.
and WEST CARE MEDICAL ASSOCIATES,

                        Defendants.
------------------------------------------------------------X

## CERTIFICATE OF SERVICE

        I hereby certify that I caused to be served a true and correct copy of the Plaintiff's
Notice of Motion to Remand with annexed Affidavit of Stephanie O'Connor, sworn to
the 21st day of June, 2007, and annexed Memorandum of Law in Support of Motion to
Remand, on June 22, 2007, via Regular Mail, upon each of the defendants at the
address below:

TO:    Robert W. Sparks
       Debra D. O'Gorman
       Patrick G. Broderick
       DECHERT L.L.P.
       30 Rockefeller Plaza
       New York, New York 10012
       *Attorneys for Defendants Johnson & Johnson, Johnson & Johnson*
       *Pharmaceutical Research and Development, L.L.C., and Ortho-McNeil*
       *Pharmaceutical, Inc.*

       Desiree A. Clarke, M.D
       c/o West Care Medical Associates
       327 Central Park West
       New York, New York 10025

       West Care Medical Associates
       327 Central Park West
       New York, New York 10025

                        Stephanie O'Connor (SOC-0813)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KICIA GRACE

                          Plaintiff,

      -against-

JOHNSON & JOHNSON, INC., ORTHO-
MCNEIL PHARMACEUTICAL, INC., JOHNSON &
JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C; DESIREE A. CLARK, M.D.
and WEST CARE MEDICAL ASSOCIATES,

                    Defendants.
----------------------------------------------------------------X

Case No. 07-CV-4081

Assigned to Honorable
Deborah Batts, U.S.D.J.

# PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO REMAND

Douglas & London, P.C.
Attorneys for Plaintiff
111 John Street – 14th Floor
New York, NY 10038
(212) 566-7500

**On The Brief:**
**Stephanie O'Connor (SOC-0813)**
**Virginia Anello (pending admission) (VA-8197)**

# **TABLE OF CONTENTS**

**Page Number**

PRELIMINARY STATEMENT .................................................................. 1

PROCEDURAL HISTORY ....................................................................... 2

FACTUAL BACKGROUND .................................................................... 2

LEGAL ARGUMENT .............................................................................. 4

    A. Under the continuous treatment exception, originally set forth in a decision by the New York Court of Appeals and subsequently codified in New York CPLR § 214-a, Plaintiff's cause of action against the New York defendants did not expire until August 16, 2007, two-and-a-half years following the date that Plaintiff last saw New York defendants for treatment of her continuing injury. ........................................................ 5

    B. The question of whether the continuous treatment doctrine applies in a case such as this is a question of fact that is best left for the finders of fact to determine, in this case a jury of decedent's peers. ........................................... 10

CONCLUSION ....................................................................................... 12

i

# TABLE OF AUTHORITIES

Shamrock Oil & Gas Corp. v. Sheets,
   313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) .....................................4

Somlyo v. J. Lu-Rob Enterprises, Inc.,
   932 F.2d 1043 (2nd Cir. 1991) .....................................................................4

Pampillonia v. RJR Nabisco, Inc.,
   138 F.3d 459 (2nd Cir. 1998) .......................................................................4

New York CPLR § 214(a) ...................................................................................5

Borgia v. City of New York,
   12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (2nd Dept. 1962) .........7

Barella v. Richmond Memorial Hosp.,
   88 A.D.2d 379, 453 N.Y.S.2d 4444 (2nd Dept. 1982) .................................7

McDermott v. Torre,
   56 N.Y.2d 299, 437 N.E.2d 1108, 452 N.Y.S.2d 351 (2nd Dept. 1982) .....7

Watkins v. Fromm,
   108 A.D.2d 233, 488 N.Y.S.2d 768 (2nd Dept. 1985) ................................8

Solomonik v. Elahi,
   282 A.D2d 734, 725 N.Y.S.2d 49 (2nd Dept. 2001) ...................................8

Pierre-Louis v. Hwa,
   182 A.D.2d 55, 587 N.Y.S.2d 17, (2nd Dept. 1992)....................................8

Brown v. St. Barnabas Hosp. for Chronic Diseases,
   159 A.D.2d 674, 553 N.Y.S.2d 48 (2nd Dept. 1987) ..................................8

Sciscio v. Yadav,
   124 A.D.2d 652, 507 N.Y.S.2d 902 (2nd Dept. 1986) ................................8

Ryan v. Kountz,
   114 A.D.2d 358, 493 N.Y.S.2d 878 (2nd Dept. 1985)................................8

Cardenales v. Queens-Long Island Medical Group, P.C.,
   18 A.D.3D 689, 795 N.Y.S.2d 736 (2nd Dept. 2005)................................8

Massie v. Crawford,
   78 N.Y.2d 516, 583 N.E.2d 935 (1991) .....................................................8

i

Blaier v. Cramer,
303 A.D.2d 301, 756 N.Y.S.2d 561 (1st Dept. 2003) ...................................................... 10

Chulla v. DiStefano
242 A.D.2d 657, 662 N.Y.S.2d 570 (2nd Dept. 1997) ...................................................... 10

Krzesniak v. New York University,
    22 A.D.3d 378, 802 N.Y.S.2d 447 (1st Dept. 2005) .................................................. 10

Dunning v. Brisson,
    21 A.D.3d 271, 800 N.Y.S.2d 8 (1st Dept. 2005) ...................................................... 10

Prinz-Schwartz v. Levitan,
    17 A.D.3d 175, 796 N.Y.S.2d 36 (1st Dept. 2005) .................................................... 10

Dexter v. A C & S Inc.,
    2003 WL 22725461 at *2 (S.D.N.Y. 2003) ............................................................... 11

Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.,
    314 F. Supp.2d 177, 182 (S.D.N.Y. 2003) .............................................................. 11

Nemazee v. Premier, Inc.
    232 F. Supp.2d 172, 178 (S.D.N.Y. 2002) .............................................................. 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

KICIA GRACE

      Plaintiff,

   -against-

JOHNSON & JOHNSON, INC., ORTHO-
MCNEIL PHARMACEUTICAL, INC., JOHNSON &
JOHNSON PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C; DESIREE A. CLARK, M.D.
and WEST CARE MEDICAL ASSOCIATES,

      Defendants.

-------------------------------------------------------------X

Case No. 07-CV-4081

**PLAINTIFF'S MEMORANDUM
OF LAW IN SUPPORT OF
MOTION TO REMAND**

## PRELIMINARY STATEMENT

Plaintiff Kicia Grace moves the Court for an Order pursuant to 28 U.S.C. 1447 for remand of all causes of action asserted by Plaintiff against named defendants on the grounds that this Court lacks subject matter jurisdiction to hear this case. Plaintiff, a citizen of New York, filed this present lawsuit against five individual defendants in New York State Court. Of these five defendants, Desiree A. Clarke, M.D. ("Dr. Clarke") and West Care Medical Associates ("West Care") (collectively hereinafter referred to as "New York defendants") are also citizens of New York. As such there is no complete diversity between plaintiff and defendants. Thus, this court lacks diversity of citizenship jurisdiction.

The three remaining defendants, Johnson & Johnson (Johnson &Johnson), Ortho-McNeil Pharmaceutical, Inc. ("Ortho-McNeil") and Johnson & Johnson Pharmaceutical Research and Development L.L.C. ("J&JPRD") (collectively hereinafter referred to as "removing defendants"), allege that Plaintiff fraudulently joined the New York defendants in

1

an effort to defeat diversity of citizenship jurisdiction, and, thus, the citizenship of the New York defendants should be ignored.  However, defendants have failed to carry their heavy burden of proving that the New York defendants were fraudulent joined.  Controlling Federal and New York case law compels the Court to remand this case back to state court since joinder of the New York defendants was proper.

## PROCEDURAL HISTORY

Plaintiff filed this action against five individual Defendants in the Supreme Court of New York, County of New York, on April 23, 2007.  The removing defendants were served with process on or about May 9, 2007.  Plaintiff is a citizen of New York.  Two of the five defendants are also citizens of New York.  In her complaint Plaintiff alleges numerous state law causes of action against all five defendants arising out of her use of the Ortho Evra birth control patch.

On May 24, 2007 the removing defendants filed a notice of removal in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1446. The removing defendants allege that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.  In particular, removing defendants allege that Plaintiff fraudulently joined New York defendants in an effort to defeat diversity of citizenship jurisdiction.  Plaintiff's motion to remand this case back to state court was filed timely.

## FACTUAL BACKGROUND

This is a products liability/medical malpractice action arising out of plaintiff's use of the Ortho Evra birth control patch.  Plaintiff is a citizen of New York, as are the New York defendants.  The removing defendants are not citizens of New York.

2

The Ortho Evra birth control patch was prescribed to Plaintiff by Dr. Clarke and West Care. (Attached hereto as Exhibit "A" are the medical records of Dr. Clarke and West Care). Plaintiff received Ortho Evra as early as February 2004 up through and including May 2004. (See Exhibit A). Due to her use of the patch, Plaintiff was caused to suffer a pulmonary embolism on or about May 11, 2004. (Attached hereto as Exhibit "B" are the medical records of Beth Israel Medical Center). Even after her injury Plaintiff held great trust in the New York defendants and she continued to see them for treatment of her injury up through February 15, 2005. (See also Exhibit A).

The Ortho Evra birth control patch is a product of Johnson &Johnson, Ortho-McNeil and J&JPRD. In November 2005, the Federal Drug Administration ("FDA") mandated a new warning to be placed on the Ortho Evra birth control patch, specifically stating that the Ortho Evra birth control patch contained 60% higher estrogen levels than oral contraceptives, and thereby exposed users to a much greater risk of blood clot and stroke. It is well-settled and undisputed in this case that patients who are prescribed estrogen or hormonal birth control are at an increased risk of developing clots in the veinous system (venous thromboemboli or VTEs). It is the claim in this case that the defendants knew and failed to warn the public that delivering estrogen as hormonal birth control through a transdermal system exposed patients to a 60% greater amount of the hormone then oral contraceptives, thereby greatly increasing the risk of a VTE in women using the patch versus the pill. Indeed it was not until the FDA intervened that the defendants began warning of this extreme increase in potential consequent risk. (Attached hereto as Exhibit "C" is the October 2006 label change that was published by the removing defendants and disseminated to physicians).

3

Plaintiff filed her action in New York state court against these five defendants on April 23, 2007, well within the statutory time periods required by New York law. (Attached hereto as Exhibit "D" is the Summons and Complaint filed on April 23, 2007).

## LEGAL ARGUMENT

Both The U.S. Supreme Court and the Second Circuit have held that the removal statute on which the defendants rely must be construed narrowly, and that any doubts should be resolved ***against*** removability. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045-46 (2nd Cir. 1991). The reasoning behind this settled rule of law is to respect the independence of the state courts and to control the federal docket. Id.

In situations in which a defendant seeking removal alleges that the plaintiff has fraudulently joined parties in an effort to defeat diversity of citizenship, the Second Circuit has held that "the defendant must demonstrate, by ***clear and convincing evidence***, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is ***no possibility***, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia v. RJR Nabisco, Inc. 138 F.3d 459, 461 (2nd Cir. 1998). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Id. "In evaluating the existence of fraudulent joinder, the Court must determine whether ***the mere possibility exists*** that plaintiff can establish any cause of action against a defendant." Id. (quoting Allied Programs Corp. v. Puritan Ins. Co. 592 F.Supp. 1274, 1276 (S.D.N.Y. 1984)). "Joinder will be considered fraudulent when it is established 'that there

4

can be no recovery [against the defendant] under the law of the state on the cause alleged.'"

Id. (quoting Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962).

     The removing defendants have not alleged that there has been outright fraud committed in the plaintiff's pleadings. Rather, the removing defendants allege there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the New York defendants in state court because the statute of limitations on her claim has expired.[1] Simply put, the removing defendants are wrong.

     The facts of this case clearly call for, and indeed the plaintiff will rely on, the application of the "continuous treatment" exception to the general rule that actions for medical malpractice must be commenced within 2 ½ years of the date of the accrual of the cause of action. Alternatively, even if there is dispute as to whether the "continuous treatment" exception is to be applied in this case, the final determination of this issue is a matter of fact which should be left to the appropriate fact finder, a jury of plaintiff's piers.

    **A.**    **Under the "continuous treatment" exception, codified in New York CPLR § 214-a, Plaintiff's cause of action against the New York defendants does not expire until August 16, 2007, two-and-a-half years following the date on which Plaintiff last saw New York defendants for treatment of <u>her injury which was caused by their negligence.</u>**

     CPLR § 214-a governs the statute of limitations with respect to malpractice actions in the state of New York and provides in relevant part:

> An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is ***continuous treatment*** for the same illness, injury or condition which gave rise to the said act, omission or failure; ...For

---

[1] Defendants rely on the case of <u>Sanchez v. University of Pa. Museum of Archaeology and Antrhopology</u>, 2004 WL 1621184 (S.D.N.Y. 2004), where the court found that the non-diverse defendant had been fraudulently joined because the uniform three-year statute of limitations had run on plaintiff's claim against the non-diverse defendant. However, in <u>Sanchez</u> no exception to the three-year statutory period existed, as does in this case.

the purpose of this section the term "continuous treatment" shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition...

McKinney's New York Civil Practice Law & Rules Section 214-a.

The facts of this case clearly call for the application of the "continuous treatment" exception. The plaintiff alleges negligence by the New York defendants who cared for her over a course of ongoing and continuous treatment for approximately two-and-a-half years. Though her injury, which was caused by their alleged negligence, manifested on May 11, 2004, plaintiff continued to see the New York defendants for treatment of her injury until February 12, 2005.  (See Exhibit A).  As demonstrated in plaintiff's medical records, on February 12, 2005 plaintiff returned to the New York defendants for, among other things, treatment related to her prior DVT, which would of necessity, given her history, entail discussion about her prior use of hormonal contraception, and going forward, the indications (or contraindications) for hormonal contraception of any kind, be the patch or the traditional oral contraceptive, and presumably other issues relating to the formation of clots and her continued risk (if any) for developing clots in the future. (See Exhibit A). New York defendants specifically noted the following about the plaintiff's visit: "Chief Complaints: status post DVT on patch...has factor 5 leidin gene mutation...Changes in Medical History: Five leidin and DVT on OCP [the patch]." (See Exhibit A). The purpose of plaintiff's visit to New York defendants was not for a routine examination, as defendants would like it to be and have the court believe, but was an actual attempt by the plaintiff to have the New York defendants correct the condition that was caused by them due to their negligence.

The "continuous treatment" exception to the general rule regarding malpractice cases was adopted from the language contained in the New York Court of Appeals decision in

Borgia v. City of New York, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319 (2nd Dept.

1962). Codified at CPLR 214-a.  Chief Justice Desmond in his opinion notes:

> "Little argument is needed to prove the proposition that the 'continuous
> treatment' theory is the fairer one.  It would be absurd to require a wronged
> patient to interrupt corrective efforts by serving a summons on the physician
> or hospital superintendent."

Thereafter, in Barella v. Richmond Memorial Hosp., 88 A.D.2d 379, 453 N.Y.S.2d

4444 (2nd Dept. 1982), Justice Lazer discussed the reasoning behind the doctrine:

> "The rationale for the continuous treatment exception rests on a number of
> doctrinal assumptions.  Thus, it is posited that the trust and confidence that
> marks the physician-patient relationship puts the patient at a disadvantage to
> question the doctor's techniques and gives the patient the right to rely upon
> the doctor's professional skill without the necessity of interrupting a
> continuing course of treatment by instituting suit."

In this case, plaintiff held great trust and confidence in the New York defendants,

even after she learned that she had suffered a pulmonary embolism because of the birth

control patch they had prescribed to her.  She held so much trust and confidence in the

defendants she continued to see them for approximately nine months following her injury in

an effort to have them treat her injury. As demonstrated by her medical records, Kicia Grace

continued to see New York defendants until February 16, 2005 on which day her chief

complaint was her DVT caused by her use of the Ortho Evra patch. (See Exhibit A).

Twenty years after Borgia, the Court of Appeals again considered the continuous

treatment exception to the general rule regarding commencement of medical malpractice

actions, noting that the exception provides patients with the opportunity to seek corrective

treatment form the doctors rather than suing them.  McDermott v. Torre, 56 N.Y.2d 299,

437 N.E.2d 1108, 452 N.Y.S.2d 351 (2nd Dept. 1982).  Moreover, application of the exception

also gives physicians a reasonable chance to identify and correct errors made at an earlier

stage of treatment. Id.

Three years after the <u>McDermott</u> decision issued, the Second Department addressed issue of the continuous treatment exception in <u>Watkins v. Fromm</u>, 108 A.D.2d 233, 488 N.Y.S.2d 768 (2nd Dept. 1985). As noted by the <u>Watkins</u> court:

> "the relation of physician and patient, once initiated, continues until it is ended by the act of the patient, or the withdrawal by the physician with notice, or until the condition of the patient is such as no longer to require medical treatment." (*45 N.Y.Jur. [rev. vol.], Physicians and Surgeons § 118*). <u>Id.</u> at 240-241.

Similarly, it cannot be fairly argued that Plaintiff terminated her relationship with New York defendants prior to February 16, 2005. Even after she suffered her pulmonary embolism, patient continued to see New York defendants to complain of her injury, to discuss how to properly treat her injury, and to discuss what other birth control options existed that would not cause the same damaging effects as the Ortho Evra birth control patch. The evidence clearly show that the doctor-patient relationship between herself and the New York defendants was not terminated until her last visit with them on February 16, 2005.

The Second Department continues to adhere to the <u>Watkins</u> rule, which is clearly on point with the matter at hand. <u>See</u>, e.g. <u>Solomonik v. Elahi, 282 A.D2d 734, 725 N.Y.S.2d 49 (2nd Dept. 2001);</u> Pierre-Louis v. Hwa<u>, 182 A.D.2d 55, 587 N.Y.S.2d 17, (2nd Dept. 1992). See also, Brown v. St. Barnabas Hosp. for Chronic Diseases</u>, 159 A.D.2d 674, 553 N.Y.S.2d 48 (2nd Dept. 1987); <u>Sciscio v. Yadav</u>, 124 A.D.2d 652, 507 N.Y.S.2d 902 (2nd Dept. 1986); <u>Ryan v. Kountz,</u> 114 A.D.2d 358, 493 N.Y.S.2d 878 (2nd Dept. 1985); <u>Cardenales v. Queens-Long Island Medical Group, P.C.,</u> 18 A.D.3D 689, 795 N.Y.S.2d 736 (2nd Dept. 2005).

Defendants rely on the case of <u>Massie v. Crawford</u>, 78 N.Y.2d 516, 583 N.E.2d 935 (1991), in support of their argument that the "continuous treatment" exception does not apply. However, a thorough reading of <u>Massie</u> actually supports plaintiff's argument that

8

the "continuous treatment" exception should apply to the facts of this case.  In <u>Massie</u> the defendant had inserted an intrauterine birth control device (IUD) in plaintiff in 1969. <u>Id.</u> at 518. Plaintiff continued to see defendant for routine examinations until 1984, when defendant diagnosed plaintiff as having suffered from pelvic inflammatory disease (PID). <u>Id.</u>  Between the time that the IUD was inserted and the time that plaintiff was diagnosed with PID, plaintiff did not complain of the IUD and no therapy was done to correct any problems that there might have been because of the IUD.  <u>Id.</u>  Plaintiff brought suit in 1985 alleging that the PID had been caused by the IUD and that defendant was negligent in providing follow-up care, in performing periodic examinations, and failing to timely remove the IUD.  <u>Id.</u> at 518-519.  In order to determine whether the continuous treatment exception was to be applied, the court had to decide whether the PID was separate and discrete from the initial insertion of the IUD <u>Id.</u> at 519.  The court found that the two were discrete and separate and, thus, the continuous treatment exception did not apply. <u>Id.</u> at 520.  There was nothing in the records to show that plaintiff's subsequent visits to the defendant were for anything other than routine gynecological examinations. <u>Id.</u>

Unlike the plaintiff in <u>Massie</u>, this plaintiff does have proof, namely her medical records, which show that her visits to the New York defendants were not just routine gynecological examinations.  The plaintiff's medical records clearly show that plaintiff went back to see the New York defendants even after their negligence was committed for the purpose of treatment of the original condition, i.e., DVT, caused by their alleged negligence. She did not go to the defendants for a routine visit.  Her purpose was clear.  She went to see them concerning her injury and what they could do to treat it.   (<u>See</u> Exhibit A).

Thus, the application of the continuous treatment doctrine, which would extend the statute of limitation period for the plaintiff's cause of action until August 16, 2007, fosters

9

the policy of promoting the continuity of the physician-patient relationship, which is inherent in the decided cases as well as the legislative intent behind codification of 214-a.

B.    **The question of whether the "continuous treatment" doctrine applies in a case such as this is a question of fact that is best left for the finders of fact to determine, in this <u>case, a jury of plaintiff's peers.</u>**

The issue of whether the continuous treatment doctrine applies is a matter of fact which should be left to the finder of fact. <u>Blaier v. Cramer</u>, 303 A.D.2d 301, 756 N.Y.S.2d 561 (1st Dept. 2003); <u>Chulla v. DiStefano,</u> 242 A.D.2d 657, 662 N.Y.S.2d 570 (2nd Dept. 1997). When triable issues of fact exist as to whether there is a continuous course of treatment by the defendant, summary judgment must be denied. <u>Krzesniak v. New York University,</u> 22 A.D.3d 378, 802 N.Y.S.2d 447 (1st Dept. 2005); <u>Dunning v. Brisson</u>, 21 A.D.3d 271, 800 N.Y.S.2d 8 (1st Dept. 2005); <u>Prinz-Schwartz v. Levitan,</u>17 A.D.3d 175, 796 N.Y.S.2d 36 (1st Dept. 2005).

Removing defendants disagree with the plaintiff's position that the continuous treatment doctrine applies in this particular case.  They argue that plaintiff's visits to her physician were routine checkups as opposed to continuous treatment of her medical condition.  Defendants, however, fail to note that the plaintiff's medical records clearly show that plaintiff continued to see New York defendants up through and until February 16, 2005, not for routine checkups, but in an effort to have them treat her medical condition, namely her pulmonary embolism, which they caused due to their negligence.    Plaintiff and Defendants clearly dispute whether the continuous course of treatment exception applies in this case, but this is not the proper forum in which that dispute should be resolved.    The

proper forum is in state court and the proper persons to resolve the dispute are a jury of plaintiff's peers.

With respect to notices of removal and motions to remand, the court "confronts something very different than a motion for summary judgment." Dexter v. A C & S Inc., 2003 WL 22725461 at *2 (S.D.N.Y. 2003). "It must be remembered that "[t]he strength of plaintiff's case...is not relevant in the present context." Id. (quoting Arsenault v. Congoleum Corporation, 2002 WL 472256 at *8 (S.D.N.Y. 2002). "There need be only a possibility that a right to relief exists under the governing law to avoid a finding of fraudulent joinder." Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp.2d 177, 183 (S.D.N.Y. 2003)(quoting 14B Wright, Miller & Cooper, § 3721 at 331.). Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder. Nemazee v. Premier, Inc. 232 F. Supp.2d 172, 178 (S.D.N.Y. 2002).

In light of the fact that under New York law plaintiff's cause of action against the New York defendants would survive a motion for summary judgment (See CPLR §3212(a)), there is no valid argument that defendants can make to show that plaintiff fraudulently joined the New York defendants in an effort to defeat diversity of citizenship jurisdiction. Plaintiffs clearly have alleged a meritorious cause of action against the New York defendants, and, have a right under the present factual scenario to have their day in the forum of their choice.

Therefore, removal to federal court was not proper. This would be true even if the "reasonable basis" standard on which the defendants rely was to be applied. [2]

---

[2] Removing defendants rely on the case of In Re Rezulin Products Liability Litigation, 133 F.Supp.2d 272, which supports the proposition that all that is required by defendants is a showing that there is "no reasonable basis" for predicting liability on the claims alleged. Even under this slightly relaxed standard, removing defendants could not meet their heavy burden of proof, especially given the fact that plaintiff's cause of action would survive the much stricter standard called for on a motion for summary judgment.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff Kicia Grace respectfully requests that this Court issue and Order remanding the above-captioned matter back to the State Court of New York, County of New York, and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            June 21, 2007

DOUGLAS AND LONDON, P.C.

By:     _____
        Stephanie O'Connor (SOC-0813)
        *Attorneys for Plaintiff*
        111 John Street, 14th Floor
        New York, New York 10038
        (212) 566-7500

12