UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

KICIA GRACE,

       Plaintiff,

v.

JOHNSON & JOHNSON, INC.,
ORTHO-McNEIL PHARMACEUTICAL,
INC., JOHNSON & JOHNSON
PHARMACEUTICAL RESEARCH &
DEVELOPMENT L.L.C.;
DESIREE A. CLARK, M.D. and
WEST CARE MEDICAL ASSOCIATES,

       Defendants.

-------------------------------------------------------- X

Case No. 07-cv-4081-DAB (Batts, J.)

**DEFENDANTS JOHNSON & JOHNSON, ORTHO-MCNEIL PHARMACEUTICAL, INC., AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT LLC'S BRIEF OPPOSING PLAINTIFF'S MOTION TO REMAND**

**PRELIMINARY STATEMENT**
**This Case Is in the Process of Being Transferred to MDL No. 1742**
**Pursuant to a Conditional Transfer Order.**

The Pharmaceutical Defendants timely submit their Brief Opposing Plaintiff's Motion to Remand in accordance with the filing rules applicable on this date, but point out to the Court that this case is in the process of being transferred to MDL No. 1742. Specifically, following notice to the MDL Panel of this action on May 24, 2007 (Notice of Tag-Along 48), this case became part of Conditional Transfer Order (CTO) 44, filed with the Judicial Panel on Multidistrict Litigation (JPML) on June 21, 2007. Plaintiff did not oppose CTO 44 and therefore, as of July 6, 2007 (under Rule 7.5 of JPML Rules), a Final Transfer Order will be filed imminently (generally within two to three days) in the Northern District of Ohio MDL. Upon the filing of that Order (likely before Plaintiff's reply brief in support of remand is due), this case will be transferred to the MDL, and the MDL Court will assume jurisdiction over this case and all pending motions.

I.  **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

Plaintiff's Motion for Remand fails because her argument that the continuous treatment exception spares her time-barred malpractice claims is entirely unsupported by (and in fact contradicted by) Plaintiff's Complaint, and by the medical records attached to her motion papers. Without any support in the Complaint or the medical records (which should not even be considered in a fraudulent joinder analysis), Plaintiff's tolling argument is reduced to "wishful speculation" – an insufficient basis on which to establish "continuous treatment." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 285 (S.D.N.Y. 2001). Because Plaintiff cannot establish the continuous treatment exception to the applicable two and a half year statute of limitations, she cannot resuscitate her time-barred claims. Thus, there is no reasonable basis in fact or law to predict a finding of liability on the medical malpractice claims asserted against the only two non-diverse medical Defendants in this case. Without this reasonable basis in fact or law, the two non-diverse medical Defendants have been fraudulently joined as a matter of law and their citizenship is thus ignored for determining the diversity jurisdiction of this Court.

II.  **FACTS PERTINENT TO THIS MOTION**

A.  **Plaintiffs' Claims.**

Plaintiff Kicia Grace filed this pharmaceutical product liability case in New York state court on April 23, 2007, served it on May 9, 2007, and assert claims for a pulmonary embolism she sustained on May 13, 2004 allegedly due to her two-month use of the Ortho-Evra® contraceptive patch. (Compl., ¶ 18.) As to the diverse Pharmaceutical Defendants (Johnson & Johnson, Ortho-McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research and Development) she asserts product liability and warranty claims, and a claim for punitive damages. (*See generally* Compl.) As to the two non-diverse Gynecologic Defendants, Desiree A. Clark, M.D. and West Care Medical Associates, she asserts medical malpractice claims based

on their actions in prescribing the Ortho-Evra® birth control patch for Plaintiff in March 2004. (Compl., Counts 1 and 2.)

### B. Defendants' Notice of Removal.

The Pharmaceutical Defendants timely filed their Notice of Removal on May 24, 2007 based on the diversity jurisdiction of this Court under 28 U.S.C. § 1332. In their notice, they established complete diversity between Plaintiff (a New York citizen) and the Pharmaceutical Defendants (citizens of New Jersey and Delaware). They also established that the two non-diverse Gynecologic Defendants (both New York citizens) were fraudulently joined because the medical malpractice claims asserted against them are time-barred as a matter of law. Specifically, because the Gynecologic Defendants prescribed the Ortho-Evra® patch to Plaintiff in March 2004, and the claimed injury occurred on May 13, 2004, the very latest Plaintiff could have filed her medical malpractice claims under the applicable two and half year statute of limitations would have been November 13, 2006. Because Plaintiff did not file her malpractice claims until April 2007, they are time-barred as a matter of law.

The Pharmaceutical Defendants also demonstrated that the "continuous treatment" tolling exception does not apply. Plaintiff does not allege (nor can she possibly establish) that she was under the Gynecologic Defendants' continuous treatment (both before and after pulmonary embolism) for a specific medical condition that led to her pulmonary embolism. Her two post-embolism annual gynecologic visits to Dr. Clark were just that – routine gynecologic exams that cannot establish that Plaintiff was under Dr. Clark's continuous treatment until February 2005 for a specific condition that led to her pulmonary embolism. *See, e.g., Massey v. Crawford*, discussed *infra* (routine gynecologic exams could not serve as a basis for applying continuous treatment exception because plaintiff could have interrupted the services and switched physicians at any time without jeopardizing her health). Thus, because the Court should ignore the

citizenship of the fraudulently joined Gynecologic Defendants, and because complete jurisdiction otherwise exists, the Pharmaceutical Defendants established this Court's diversity jurisdiction over this matter. (*See generally* Notice of Removal.)

### C.  Plaintiff's Motion to Remand.

Plaintiff does not contest that the amount in controversy exceeds $75,000; rather, the sole basis for her motion is that the Pharmaceutical Defendants failed to establish the fraudulent joinder of the non-diverse Gynecologic Defendants. That is incorrect.

#### 1.  Plaintiff's argument in support of remand.

Plaintiff argues that she sought continuous treatment from the Gynecologic Defendants for her post-embolism condition and for the purpose of discussing and evaluating alternatives to the Ortho Evra® birth control patch. (Pl.'s Mem. of Law in Support of Mot. to Remand, at 3, 6-8: "Even after she suffered her pulmonary embolism, patient continued to see New York defendants to complain of her injury, to discuss how to property treat her injury, and to discuss what other birth control options existed that would not cause the same damaging effects as the Ortho Evra® birth control patch." *Id.* at 8.)

#### 2.  Evidence offered in support of remand argument.

Plaintiff alleges that she was a patient of the two Gynecologic Defendants from October 2002 up to and including February 16, 2005 during which time she had "**numerous regular checkups** ...." (Compl., ¶¶ 16, 37, 84) (emphasis added). She also relies on her medical records, which memorialize three annual gynecologic exams, three separate appointments for discrete gynecologic issues, and test/lab results. *See* Exh. A to Plaintiff's Motion to Remand.

As memorialized in a Progress Note, Dr. Clark prescribed the Ortho-Evra® patch to Plaintiff in February 2004, and advised her to return for her Annual Visit. (*Id.*) Central to Plaintiff's argument are two subsequent annual gynecologic exams – one on August 24, 2004,

and one on February 16, 2005, both of which post-date her May 13, 2004 pulmonary embolism. The Annual Visit forms, however, simply reflect routine gynecologic examinations:

- **The August 24, 2004 Annual Visit Form**. Plaintiff's August 24, 2004 annual gynecological visit is memorialized on a one-page "Annual Visit Form" on which the physician notes, under the "CHIEF COMPLAINTS" section, that Plaintiff is there for her annual visit and requesting an STD screen. (Attached hereto as Ex. 1, at 1, also attached to Plaintiff's affirmation.) While there is a notation in the "Changes in Medical History" section referencing Plaintiff's May 13, 2004 pulmonary embolism (noted as deep vein thrombosis ("DVT")), the remainder of the one-page form tracks a routine gynecological annual exam, with no reference to any discussion regarding the Ortho-Evra® patch, alternatives to that specific patch, Plaintiff's pulmonary embolism, or treatment for that injury. (*Id.*)

- **The February 16, 2005 Annual Visit Form**. Likewise, this Annual Visit Form tracks a routine annual gynecological exam. The only difference is that Plaintiff's gynecologist places a portion of her medical history under the "CHIEF COMPLAINTS" section of the form. (See Ex. 1, at 1.) Specifically: "[Status post] DVT on patch … has factor 5 leidin mutation … CHANGES IN MEDICAL HISTORY: V leidin and DVT on OCP." (*Id.*) Other than this brief reference to Plaintiff's medical history (status post DVT and gene mutation), there is nothing in the form to remotely suggest that the purpose of Plaintiff's visit was to discuss the Ortho-Evra® patch, alternatives to that specific patch, Plaintiff's pulmonary embolism, or treatment for that injury.

### III. LAW AND ARGUMENT

Contrary to the sweeping statements in Plaintiff's supporting brief (at pp. 3, 6-8), there is no allegation in the Complaint and no medical record (assuming medical records could even be considered) on which to base any argument that Plaintiff received continuous treatment from the Gynecologic Defendants for: 1) her pulmonary embolism or post-embolism medical condition; or 2) for the specific purpose of continuously discussing and evaluating alternatives to the Ortho-Evra® birth control patch. Simply, Plaintiff cannot establish "continuous treatment" under NY CPLR § 214-a, or that she could not have interrupted services and switched physicians without jeopardizing her health. *Massie v. Crawford, infra*. The tolling exception therefore does not apply, and plaintiff's malpractice claims are time-barred as a matter of law. This establishes fraudulent joinder, and this Court's proper jurisdiction over this matter.

5

### A. The Meaning of "Fraudulent Joinder" and the Standard Applicable to a Fraudulent Joinder Analysis.

Though labeled "fraudulent" joinder, the core question to be answered is not one of motive but rather, "whether the plaintiff has a legitimate claim against the non-diverse or in-state defendant ...." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 279 (S.D.N.Y. 2001). Stated another way, the question is always is the same in substance: "[W]hether there is a legally sufficient and factually arguable claim for relief as between the parties whose presence would destroy complete diversity of citizenship." *Rezulin*, 133 F. Supp. 2d at 279, fn. 2.

The standard applicable to the analysis is whether defendants have established that there is "no reasonable basis" for predicting liability on the claims alleged based on the pleadings. *Rezulin*, 133 F. Supp. 2d at 279-280, *citing Pampillonia v. R.J.R. Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998). *Accord American Mut. Liab. Ins. Co. v. Flintkote Co.*, 565 F. Supp. 843, 845 (S.D.N.Y. 1983) (noting that test for fraudulent joinder "has uniformly been at least whether there is any reasonable basis for predicting that state law might impose liability on the non-diverse defendant"). *See also Pampillonia*, 138 F.3d at 461 (plaintiff's complaint failed to allege sufficient factual foundation to support either of its claims against employer's parent company; because plaintiff could not state a claim against parent company, district court properly denied motion to remand to state court).

Whether the "reasonable basis" standard has been met – in both fact and law – is to be determined "based on the pleadings." *Pampillonia*, 138 F.3d at 461; *Rezulin*, 133 F. Supp. 2d at 284. As noted by this Court in *Rezulin*, "[f]ederal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the original complaint." *Rezulin* at 284 (citations omitted). Any different approach could "close the doors to federal courts solely on the basis of plaintiffs' wishful speculation." *Id.*

at 285. That is, although a defendant "bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that [plaintiffs] might allege in the future: Only [the] present allegations count." *Id., citing Poulos v. Nass Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992)); *accord Vasura v. Acands*, 84 F. Supp. 2d 531, 539 (S.D.N.Y. 2000) (fraudulent joinder analysis made with reference to original complaint); *Negrin v. ALZA Corporation*, Case No. 98CIV. 4722 DAB, 1999 WL 144507 (S.D.N.Y. 1999), at *3, (unreported decision attached hereto as Ex. 2) (in considering the fraudulent joinder issue, the court "shall rely on the plaintiff's pleadings, which control"; motion for remand denied where allegations asserted against retail pharmacy had no valid basis under New York law).

### B. The Two and a Half Year Statute of Limitations Applicable to Plaintiff's Medical Malpractice Claims.

The limitations period applicable to Plaintiff's medical malpractice claims is set forth under New York Civil Practice Law and Rules Section 214-a, which provides:

> An action for medical ... malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure .... For the purpose of this section the term "continuous treatment" shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition ....

NY CPLR § 214-a (McKinney 2007). A medical malpractice cause of action accrues "on the date when the alleged original negligent act or omission occurred." *Young v. New York City Health & Hosps. Corp.*, 91 N.Y.2d 291, 693 N.E.2d 196, 670 N.Y.S.2d 169, 172 (1998).

### C. The "Continuous Treatment" Tolling Exception.

As codified under NY CPLR § 214-a, the statute of limitations applicable to medical malpractice claims may be tolled where there is "continuous treatment for the same illness, injury or condition which gave rise to said act, omission or failure." NY CPLR § 214-a. The

rationale behind the exception is rooted in the notion that it would be "absurd" to require a "wronged patient to interrupt corrective efforts by serving a summons on the physician …." *Borgia v. City of New York*, 12 N.Y.2d 151, 187 N.E.2d 777, 237 N.Y.S.2d 319, 322 (1962). For the tolling exception to apply, the key question is whether Plaintiff could have "interrupted the services and switched physicians at any time without jeopardizing her health." *Massie v. Crawford*, 78 N.Y.2d 516, 583 N.E.2d 935, 577 N.Y.S.2d 223, 225 (1991). If so, the tolling exception does not apply.

"Continuous treatment" under the statute means treatment for the "same illness, injury or condition which gave rise to the [alleged] act, omission or failure," as opposed to a general continuing relationship between physician and patient. NY CPLR § 214-a. On this score, the statute explicitly provides that "continuous treatment" does *not* contemplate circumstances where a patient initiates return visits merely to have his or her condition checked. *Id*. Likewise, the continuing nature of a diagnosis does not itself amount to continuous treatment; in the absence of continuing efforts by a doctor to treat a specific condition (the same condition which gave rise to the act, omission or failure) – none of the policy reasons underlying the continuous treatment doctrine justify the patient's delay in bringing suit. *Nykorchuk v. Henriques*, 78 N.Y.2d 255, 577 N.E.2d 1026, 573 N.Y.S.2d 434, 436 (1991). *See also Massie v. Crawford*, 577 N.Y.S.2d at 225 ("[r]outine examinations of a patient who appears to be in good health or diagnostic examinations, even when conducted repeatedly over a period of time, are not 'a course of treatment'" (citations omitted)); *Charalambakis v. City of New York*, 46 N.Y.2d 785, 386 N.E.2d 823, 413 N.Y.S.2d 912 (1978) (continuous treatment doctrine did not apply because infant's visits to the hospital were "merely for routine pediatric examinations"); *accord Ganess v. City of New York*, 85 N.Y.2d 733, 736, 651 N.E.2d 1261, 628 N.Y.S.2d 242 (1995) ("neither the mere

'continuing relation between physician and patient' nor 'the continuing nature of a diagnosis' is sufficient to trigger continuous treatment tolling exception," *citing Nykorchuk v. Henriques*, 78 N.Y.2d at 258).

The New York Court of Appeals ruled on this very issue in *Massie v. Crawford* – its decision is dipositive. In *Massie*, as here, the plaintiff attempted to rely on subsequent visits to her gynecologist for routine gynecological examinations to reap the benefit of the "continuous treatment" tolling exception – an effort rejected by New York's highest Court. Specifically, in *Massie*, the plaintiff's physician inserted an intrauterine device ("IUD") in 1969. For the next 15 years, he conducted routine gynecological exams of the plaintiff, and addressed various discrete medical issues and problems. In January 1984, he diagnosed the plaintiff with pelvic inflammatory disease, which ultimately required a hysterectomy.

Plaintiff filed suit in 1985 claiming that her physician failed to provide proper follow-up care after insertion of the IUD. Her physician countered that the incident of pelvic inflammatory disease was "separate and discrete" from the initial IUD insertion treatment, and that plaintiff's claims, based on conduct occurring more than two years and six months before 1984, were time-barred as a matter of law. The New York Court of Appeals agreed:

> The single procedure defendant performed for plaintiff was the insertion of the IUD; her subsequent visits to him were for routine gynecological examinations, not therapy to correct a medical condition. **Consequently, these visits may not serve as a basis for applying the continuous treatment exception because plaintiff could have interrupted the services and switched physicians at any time without jeopardizing her health**.

*Massie*, 577 N.Y.S.2d at 225 (emphasis added). The same is true here. As demonstrated below, Plaintiff cannot rely on subsequent routine visits to the Gynecologic Defendants to invoke the continuous treatment exception. Accordingly, the claims against those defendants are time-barred.

9

### D. Plaintiff's Medical Malpractice Claims Are Time-Barred as a Matter of Law; the "Continuous Treatment" Exception Does Not Apply.

Plaintiff alleges that the Gynecologic Defendants committed malpractice by prescribing Ortho-Evra® to her at some time before she suffered her May 13, 2004 pulmonary embolism. Even if the alleged malpractice occurred as late as May 13, 2004, Plaintiff would have had to file her malpractice claims no later than November 13, 2006 – two and one-half years after the alleged malpractice. She did not. Because she did not file her malpractice claims until April 2007, they are time-barred as a matter of law.

The continuous treatment exception does not salvage Plaintiff's claims. Plaintiff's Complaint does not allege that she was under the Gynecologic Defendants' continuous treatment (both before and after her pulmonary embolism) for a specific medical condition that led to her pulmonary embolism. In fact, she virtually alleges just the opposite – that beginning in October 2002, Plaintiff had "numerous regular checkups up through and including February, 2005." (Compl., ¶¶ 16, 84.)

Plaintiff's "new" argument – first advanced in her motion to remand and based solely on unsupported interpretations of two medical records – likewise fails. First, the medical records are irrelevant to this issue – Plaintiff is limited to the allegations in her Complaint to establish the tolling exception. (See, infra, pp. 7-8; "Only the present allegations count," Rezulin at 284 (citation omitted).)

Even if they were considered, the records reflect that Plaintiff's two annual gynecologic visits to Dr. Clark following her pulmonary embolism were just that – routine gynecologic examinations that do not establish that Plaintiff was under Dr. Clark's continuous treatment until February, 2005 for a specific condition that led to her pulmonary embolism. Indeed, under Plaintiff's analysis, the continuous treatment exception can be triggered simply by making an

appointment for a routine general examination. It cannot, and that is why the statute expressly states that the term "continuous treatment" "*shall not include* examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition." NY CPLR § 214-a (emphasis supplied).

Here, as in *Massie*, the act of prescribing the Ortho-Evra® patch was a single, specific act related to hormonal birth control; Plaintiffs' subsequent gynecologic visits (two annual exams) were for routine exams – "not therapy to correct a medical condition." *Massie* at 225. Thus, the two subsequent gynecologic visits "may not serve as a basis for applying the continuous treatment exception." *Id*. Like the plaintiff in *Massie*, the Plaintiff here could have "interrupted the services and switched physicians at any time without jeopardizing her health." *Id*. Simply, "continuous treatment" has not been established.

Plaintiff's arguments to the contrary are wholly unsupported; they are neither based on the allegations in Plaintiff's Complaint (which control this analysis), nor any viable interpretation of Plaintiff's medical records (which should not be considered). More specifically, and contrary to Plaintiff's unsupported statements (*see* Plaintiff's Supporting Br. at 3, 6-8), there is no allegation in Plaintiff's Complaint, nor any medical record that establishes: 1) the Gynecologic Defendants treated Plaintiff for her pulmonary embolism injury through February 15, 2005; 2) Plaintiff's February 12, 2005 appointment was for the purpose of receiving treatment related to her prior DVT which included discussions about prior hormonal contraception use, future hormonal contraception use and other issues relating to the formation of clots in the future; 3) Plaintiff's February 12, 2005 visit was not a routine annual examination but rather, a visit initiated by Plaintiff for the purpose of having the Gynecologic Defendants correct Plaintiff's pulmonary embolism condition; 4) Plaintiff continued to see the Gynecologic

Defendants for nine months following her pulmonary embolism in an effort to have them treat her injury; and 5) Plaintiff continued seeing the Gynecologic Defendants after her pulmonary embolism to complain about that injury, to discuss how to treat it, and to discuss other birth control options.

Even so, Plaintiff's arguments misinterpret the statute's tolling provision. The statute requires continuous treatment for the condition that gave rise to the alleged act of malpractice. That "condition" was not treatment for a pulmonary embolism, or post-embolism treatment that continued after the alleged negligence; the "condition" that triggered the alleged malpractice was Plaintiff's specific request for a birth control patch and the prescription for the Ortho-Evra® patch in March 2004. That "condition" ceased to exist in May 2004 when Plaintiff stopped using the Ortho-Evra® patch.

It is well established in this jurisdiction that this Court's analysis as to whether the "reasonable basis" standard for fraudulent joinder has been met is to be determined with reference to Plaintiff's original Complaint. *Rezulin*, 133 F. Supp. 2d at 284; *Vasura*, 884 F. Supp. 2d at 539; *Negrin* at *3. As this Court has clearly stated, any different approach could "close the doors to federal courts solely on the basis of plaintiffs' wishful speculation." *Rezulin* at 285. Plaintiff's arguments in support of application of the continuous treatment doctrine are just that – arguments based solely on wishful speculation without any foundation in Plaintiff's Complaint. Even if it were proper to consider Plaintiff's plain and unambiguous medical records, Plaintiff fares no better as no viable interpretation of those records supports her argument. Because Plaintiff cannot establish facts sufficient to trigger the continuous treatment exception, her claims are time-barred as a matter of law.

### E.  Fraudulent Joinder Established.

As established in the Pharmaceutical Defendants' Notice of Removal, the Gynecologic Defendants are the only non-diverse defendants in this case. Based on the analysis above, Defendants have established that there is no "legally sufficient and factually arguable claim for relief" as between the Plaintiff and the Gynecologic Defendants – the parties "whose presence would destroy complete diversity of citizenship." *Rezulin*, 133 F. Supp. 2d at 279, fn. 2. That is, there is "no reasonable basis" in law or in fact for predicting liability on the medical malpractice claims alleged against the Gynecologic Defendants. *Rezulin*, at 279-280, citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2d Cir. 1998). Because Plaintiff's claims against the non-diverse Gynecologic Defendants are time-barred as a matter of law, these Defendants were fraudulently joined and removal of the action was therefore proper as complete diversity exists between Plaintiff and the remaining Pharmaceutical Defendants.

### IV.  CONCLUSION

Plaintiff's Motion to Remand fails because it is based on unsupported arguments advanced to take advantage of a tolling exception under the statute of limitations applicable to medical malpractice claims. The arguments advanced are neither rooted in the allegations asserted in Plaintiff's Complaint, nor any viable interpretation of the few medical records Plaintiff relies on to advance her argument. In short, under the controlling standard applicable to this fraudulent joinder analysis, there is no "reasonable basis" in fact or law for predicting liability on the medical malpractice claims alleged against the non-diverse Gynecologic Defendants. The Pharmaceutical Defendants have therefore established that Plaintiff fraudulently joined them. Because the Court must therefore ignore their citizenship, this Court has complete diversity jurisdiction over this matter and Plaintiff's Motion for Remand should be denied.

Respectfully submitted,

DECHERT LLP

By: /s/ Patrick G. Broderick
    Robert W. Sparks (RS 4250)
    Debra D. O'Gorman (DO 1643)
    Patrick G. Broderick (PB 9556)

30 Rockefeller Plaza
New York, NY 10112-2200
(212) 698-3500

Attorney for Defendants Johnson & Johnson, Ortho-McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research & Development LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants Johnson & Johnson, Ortho-McNeil Pharmaceutical, Inc., and Johnson & Johnson Pharmaceutical Research & Development LLC's Brief Opposition Plaintiff's Motion to Remand was served via electronic filing upon all parties so registered, and upon other defendants via first class mail, this 9th day of July, 2007, upon the following counsel of record:

| | |
|---|---|
| Stephanie O'Connor, Esq.<br>Douglas & London, P.C.<br>111 John Street, 14th Floor<br>New York, NY  10038 | *Attorneys for Plaintiff* |
| Desiree A. Clark, M.D.<br>c/o West Care Medical Associates<br>327 Central Park West<br>New York, New York  10025 | *Defendant* |
| West Care Medical Associates<br>327 Central Park West<br>New York, New York  10025 | *Defendant* |

/s/ Patrick G. Broderick
Patrick G. Broderick (PB 9556)